(August 26, 1993)

■ ORLANDO MELENDEZ, Respondent, v NEW YORK CITY TRANSIT AUTHORITY, Appellant, et al., Defendant. [601 NYS2d 489] —Judgment, Supreme Court, Bronx County (Lewis R. Fried-

man, J.), entered November 8, 1991, which, after a jury trial, awarded plaintiff Orlando Melendez a total of $469,624.28, unanimously reversed, on the law and on the facts, the judgment vacated, and the matter remanded for a new trial, without costs or disbursements.

On August 3, 1984, plaintiff, then 16, allegedly fell and broke a toe on a stairway at a subway station operated by defendant New York City Transit Authority. The only witness to such fall was his best friend, a young man named Brodie. Photographs were admitted to show the stairway at issue, but when first offered, not to depict the condition of the particular step on which plaintiff slipped. Thereafter one of the photographs was admitted to depict the exact condition of the seventh stair from the bottom at the time of the incident, even though there was no showing as to when the photograph was taken. Plaintiff's counsel was allowed to question witnesses and evoke answers on the assumption that the photographs were taken shortly after the accident. The alleged defect in the stairway was the presence of a "gooky" substance, a mixture of beer, soda, and other substances on one of the steps, which substance was seen by Mr. Brodie on the same step a week before the accident and by both plaintiff and Mr. Brodie on the day of the accident.

The criteria for the use of photographs to show a defect, that they be taken reasonably close to the time of the accident and that the condition at the time of the accident be substantially as shown in the photographs, clearly were not met (compare, Davis v County of Nassau, 166 AD2d 498; Karten v City of New York, 109 AD2d 126). Plaintiff testified that the photographs were taken a few days after the accident, but he said he was not there when they were taken. The jury requested: "We need to know when the pictures were taken". Since the jury had just asked when, the court refused to have plaintiff's admission that he was not there read to them. Clearly, not only was no proper foundation for the photographs laid, but the jury was not allowed to see how hopeless the effort to lay one was. Where a defect in a concrete surface had depth and width and exhibited irregularity, indicating that the condition had to have come into existence over a period of time, the Court of Appeals has held that a jury could find that, "whenever taken," certain photographs are a fair and accurate representation of a stair at the time of an accident (Taylor v New York City Tr. Auth., 48 NY2d 903, 904). Where, as here, however, the alleged defect was as

ephemeral as spilled beer and soda, it must be shown when the photographs were taken. The admission of the photographic evidence here was erroneous.

Plaintiff was permitted to testify concerning a conversation with an unidentified police officer immediately after the accident, thus bolstering his account of the incident. Allowing such testimony was error. Since plaintiff was taken to the hospital from his home and not from the alleged scene of the accident, and since there is some improbability in plaintiff's and Mr. Brodie's account of the persistence of the substance on the seventh stair from the bottom and their noting the substance on that stair a week before and a few days before the accident, it is unknown what effect the admission of plaintiff's prior statement had upon the jury's deliberations, and the error of admitting plaintiff's statement may not be considered harmless *(Shufelt v City of New York,* 80 AD2d 554, 555).

In addition to the above errors, the court below allowed plaintiff's counsel, in effect. to testify and to inflame the jury on racial issues. He engaged defendant's experts in long irrelevant cross-examinations concerning racial discrimination in the telecommunications industry (in which plaintiff worked) and the difference in earnings between "a Puerto Rican or a black person or a member of the WASP majority". He questioned defendant's economic expert about the difference in the attainment of management positions and asked, with respect to minorities, "Don't they have the brains to get this management job? How come they don't have it?" He questioned defendant's expert about a "recent Nynex settlement of a hundred million bucks in lieu for the failure to give management positions." He accused an expert witness of coming in to get $3,500 to testify and suggested that his report was phony. The error of admitting the photographs without a proper foundation and the error of allowing the bolstering testimony were made even more damaging in view of these base appeals to ethnic prejudice. Concur—Murphy, P. J., Sullivan, Milonas, Asch and Nardelli, JJ.